UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANETTE EILEEN MAXWELL,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:17-cv-0705 DB<br><br><br><br>ORDER |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1] Plaintiff's motion argues, in part, that the Administrative Law Judge's treatment of the medical opinion evidence and subjective testimony constituted error. For the reasons explained below, plaintiff's motion is denied, defendant's cross-motion is granted, and the decision of the Commissioner of Social Security ("Commissioner") is affirmed.

PROCEDURAL BACKGROUND

In December of 2012, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income

---

[1] Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 7 & 11.)

1

("SSI") under Title XVI of the Act alleging disability beginning on December 12, 2012. (Transcript ("Tr.") at 24, 239-41.) Plaintiff's alleged impairments included human immunodeficiency virus, acquired immunodeficiency syndrome, depression, anxiety, and asthma. (Id. at 264.) Plaintiff's applications were denied initially, (id. at 166-70), and upon reconsideration. (Id. at 174-79.)

Thereafter, plaintiff requested a hearing and hearings were held before an Administrative Law Judge ("ALJ") on August 4, 2014, and February 23, 2015. (Id. at 69-101.) Plaintiff was represented by an attorney and testified at the February 23, 2015 administrative hearing. (Id. at 76-77.) In a decision issued on April 9, 2015, the ALJ found that plaintiff was not disabled. (Id. at 36.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since December 12, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: asthma; human immunodeficiency virus ("HIV")/acquired immunodeficiency syndrome ("AIDS"); and depression (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she must avoid exposure to concentrated dusts, fumes, gases, and other environmental irritants. The claimant can perform unskilled work. She can have limited public contact, which is occasional (up to one third of the time) and superficial in nature. She can have limited contact with coworkers and supervisors that is occasional.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on January 8, 1962 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 12, 2012, through the date of this decision (20 CFR 404.1502(g) and 416.920(g)).

(Id. at 26-36.)

On September 8, 2016, the Appeals Council denied plaintiff's request for review of the ALJ's April 9, 2015 decision. (Id. at 5-8.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on April 3, 2017. (ECF No. 1.)

LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step

3

process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion asserts the following three principal claims: (1) the ALJ's treatment of the medical opinion evidence constituted error; (2) the ALJ improperly rejected subjective testimony; and (3) the ALJ erred at step five of the sequential evaluation. (Pl.'s MSJ (ECF No. 20) at 16-27.[2])

I.   Medical Opinion Evidence

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or non-examining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion

---

[2] Page number citations such as this one, are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830.  This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.)  Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'"  Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

  A. Dr. Joe Villalobos

Plaintiff first challenges the ALJ's treatment of the opinion offered by Dr. Joe Villalobos, plaintiff's treating physician.  (Pl.'s MSJ (ECF No. 20) at 16-20.)  On February 5, 2015, Dr. Villalobos completed a one-page "Medical Opinion: Physical Ability to Participate in Work Related activities" form.  (Tr. at 683.)  Therein, Dr. Villalobos opined that plaintiff could frequently lift and carry less than 10 pounds and occasionally lift and carry 10 pounds.  (Id. at 33.)  Moreover, plaintiff could stand and walk only up to three hours in an eight-hour workday while sitting up to three hours, while shifting positions at will.  (Id.)  Plaintiff could not work an eight-hour day, five days a week, and would be absent from work three times a month.  (Id.)

The ALJ afforded Dr. Villalobos' opinion "little weight."  (Id.)  In support of this determination, the ALJ noted that Dr. Villalobos' opinion was "inconsistent with the medical evidence," and offered no evidence or explanation in support.  (Id.)  Although an ALJ errs by rejecting a "check-box" form that is supported by evidence, "'[a]n ALJ may discredit treating

5

physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings.'" Burrell v. Colvin, 775 F.3d 1133, 1140 (9th Cir. 2014) (quoting Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004)).

The one-page form completed by Dr. Villalobos asked Dr. Villalobos to state what medical findings supported the limitations found in the opinion. (Tr. at 683.) Dr. Villalobos provided no answer to this question. Plaintiff argues that "[t]reatment records contain multiple references to [plaintiff's] neuropathic conditions" and "gait disturbances[.]" (Pl.'s MSJ (ECF No. 20) at 17.) The records cited by plaintiff, however, belie this argument.

Plaintiff cites to an October 24, 2013, examination where plaintiff complained of Paresthesia or "continued numbness of her extremities bilaterally." (Tr. at 576.) The record reflects that Dr. Villalobos' examination found "no sig[nificant] abnormalities on exam." (Id. at 579.) Plaintiff also cites to a January 23, 2014, examination which noted that plaintiff had presented or complained of "past unilateral body Paresthesia." (Tr. at 659.) The next sentence in the record reads "Pt no longer with symptoms." (Id.) Finally, plaintiff cites to a single instance of an objective finding by Dr. Villalobos, an August 29, 2013 examination finding "Balance & gate -+Romberg." (Id. at 588.) This single finding, however, cannot serve as the basis to support Dr. Villalobos' entire opinion.

Accordingly, the court finds that the ALJ provided clear and convincing reasons for rejecting Dr. Villalobos' opinion.

B.   Dr. Imran Khan

On February 6, 2013, Dr. Khan issued a letter to Shasta County Mental Health/Shasta Regional Hospital ER explaining that plaintiff was "placed on a 5150."[3] (Tr. at 373.) The letter explained that plaintiff presented to Dr. Khan "with significant, severe symptoms suggestive of a

---

[3] "When a person, as a result of a mental health disorder, is a danger to others, or to himself or herself, or gravely disabled, a . . . professional person in charge of a facility designated by the county for evaluation and treatment . . . may, upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services." Cal. Wel. & Inst. Code § 5150(a).

6

major depressive episode, also with suicidal ideation and was not able to contract for her safety." (Id.) Plaintiff argues that the ALJ "failed to admit [Dr. Khan's] opinions exist of record or that his opinions should be granted controlling weight." (Pl.'s MSJ (ECF No. 20) at 20.)

"In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). It is not clear that Dr. Khan's letter constituted a medical opinion. Dr. Khan's letter concerned with plaintiff's immediate safety, not whether plaintiff had a disability that had lasted or was expected to last twelve months. See 20 C.F.R. § 404.1505(a) ("The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."). And plaintiff does not explain how Dr. Khan's letter should have been interpreted by the ALJ, aside from demanding that it be given controlling weight.

Moreover, it cannot be said that the ALJ failed to admit Dr. Khan's opinion existed. The ALJ's decision discussed Dr. Khan's letter, stating that on "February 6, 2013, the claimant reported to her psychiatrist," that plaintiff was experiencing suicidal ideation brought on by grief over a sudden death. (Tr. at 31.) Plaintiff's "psychiatrist placed her on a 5150 hold" and sent her to Shasta Community Health Center. (Id.)

The decision goes on to note that upon arrival at the Crisis Unit, plaintiff "was cooperative and no longer having suicidal ideations." (Id.) The ALJ went on to explain that in February of 2014, plaintiff denied crying, feeling hopeless, worthless, or experiencing panic attacks. (Id.) In January of 2015, plaintiff reported to Dr. Khan "that she was doing reasonably well and that her mood was well controlled." (Id.)

The record reflects that plaintiff then denied "any depressive symptoms, including sad mood crying spells, feelings of hopelessness or worthless," or "any severe mood lability." (Id. at 670.) The ALJ's decision noted that as a result, Dr. Khan informed plaintiff that plaintiff need only be seen by Dr. Khan "on an as needed basis from now on." (Id. at 31.)

7

1     Accordingly, the court finds no error with respect to the ALJ's treatment of Dr. Khan's
2 letter.

        C.      Treating Therapist Ernesto Cervantes

On February 2, 2015, plaintiff's treating therapist, Licensed Clinical Social Worker ("LCSW") Ernesto Cervantes, completed a Medical Opinion re: Ability to do Work-Related Activities (Mental)" form. (Id. at 676-77.) Cervantes opined that plaintiff was either "seriously limited but not precluded," or "unable to meet competitive standards" with respect to all but one area of functioning.[4] (Id.) Moreover, plaintiff was likely to be absent from work more than four days per months due to impairments or treatment, and could not work 8 hours per day, 5 days a week. (Id. at 677.) The ALJ discussed Cervantes' opinion and afforded it "little weight." (Id. at 34.)

An LCSW is not an "acceptable medical source" but instead an "other source." See Casner v. Colvin, 958 F.Supp.2d 1087, 1097-98 (C.D. Cal. 2013). "An ALJ may discount the opinion of an 'other source,' . . . if she provides 'reasons germane to each witness for doing so.'" Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017) (quoting Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012)); see also Petty v. Colvin, 954 F.Supp.2d 914, 926 (D. Ariz. 2013) ("An ALJ is free to discount testimony from other sources, but as the Commissioner concedes, he must give reasons germane to each witness for doing so."). Here, one of the reasons offered by the ALJ for rejecting Cervantes' opinion was that Cervantes "failed to provide any medical findings to support his limitations." (Tr. at 34.)

The ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Cervantes opinion is found on a "check-box" form. (Tr. at 677.) The form asked Cervantes to "[e]xplain limitations . . . and include the medical/clinical findings that support this assessment." (Id.) Cervantes, however, provided no answer.

---

[4] In this regard, Cervantes found that plaintiff's ability to "adhere to basic standards of neatness and cleanliness" was "limited but satisfactory." (Tr. at 677.)

8

Moreover, Cervantes' treatment records appear to conflict with Cervantes' opinion. In this regard, Cervantes repeatedly found that plaintiff's Global Assessment of Functioning ("GAF") scores were 60 or 65.[5] (Tr. at 535, 544, 556, 685, 688.) "A GAF score between 51 to 60 describes 'moderate symptoms' or any moderate difficulty in social, occupational, or school functioning." Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014). A GAF score of 65 indicates "'[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships.'" Phillips v. Colvin, 61 F.Supp.3d 925, 931 (N.D. Cal. 2014) (quoting DSM-IV 34).

Plaintiff's argument acknowledges that Cervantes found plaintiff "depressed and anxious with severity he indicated was mild to moderate." (Pl.'s MSJ (ECF No. 20) at 23.) Such mild to moderate findings are inconsistent with findings that plaintiff is precluded or significantly limited in nearly all areas of functioning. Accordingly, the court finds that the ALJ provided a germane reason for discounting Cervantes' opinion.

D.    Non-Examining Physicians

Plaintiff argues that the ALJ erred by giving great weight to the opinions of non-examining psychiatrists. (Pl.'s MSJ (ECF No. 20) at 24-25.) However, "[a]n ALJ may reject the testimony of an examining, but non-treating physician, in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).

It is true that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. As discussed above, however, the ALJ did not rely

---

[5] A GAF score represents a present rating of overall psychological functioning on a scale of 0 to 100. See Diagnostic and Statistical Manual of Disorders, at 34 (Am. Psychiatric Ass'n, 4th Ed. 2000) ("DSM-IV"); see also Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721, 723 (9th Cir. 2011) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."). "GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects." Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014).

solely on the opinions of the non-examining physicians to justify the rejection of a treating physician, examining physician, or even an "other source" opinion. The court, therefore, finds no error with respect to the ALJ's treatment of the non-examining physicians' opinions.

For the reasons stated above, the court finds that the ALJ's treatment of the medical opinion evidence did not constitute error. Plaintiff is not entitled to summary judgment on this claim.

II. Subjective Testimony

    A. Plaintiff's Testimony

Plaintiff argues that the ALJ failed to provide a clear and convincing reason for rejecting plaintiff's testimony. (Pl.'s MSJ (ECF No. 20) at 25-26.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking[.]" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

////

////

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."[6] Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were "not entirely credible for the reasons explained" in the decision. (Tr. at 30.)

With respect to plaintiff's physical impairments, the ALJ noted that plaintiff testified that "she has daily shortness of breath," dizziness, headaches, and "throws up all the time because of her medications." (Id. at 31-32.) However, as noted by the ALJ "the record indicates otherwise." (Id. at 32.) In this regard, plaintiff "denied having any side effects from her medications and denied having chest pains, nausea, or vomiting to her medical providers." (Id.)

With respect to her mental impairments, the ALJ noted that plaintiff testified, in relevant part, that plaintiff "gets waves of depression where she bursts into tears . . . cannot think, and cannot retain anything." (Id. at 31.) However, "as recent as January 2015," plaintiff "denied

---

[6] In March 2016, Social Security Ruling ("SSR") 16-3p went into effect. "This ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) (quoting SSR 16-3p) (alterations omitted). The ALJ's decision here, however, was issued on April 9, 2015, prior to the implementation of SSR 16-3p.

11

having any depressive symptoms, including sad mood, crying spells, feelings of hopelessness or worthlessness." (Id.)

Inconsistency is a permissible reason to discredit subjective testimony. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) ("These inconsistencies [lab reports contradicting plaintiff's subjective complaint] constitute significant and substantial reasons to find Parra's testimony less than completely credible."). The ALJ also rejected plaintiff's testimony because the "objective evidence" and "objective findings" did "not fully support her statements." (Tr. at 32.)

In this regard, the ALJ noted that plaintiff's "physical examinations are normal and she does not have any strength deficiencies or gait disturbances." (Id.) Plaintiff's "HIV/AIDS is stable and undetectable," and plaintiff "asthma is controlled with her inhalers." (Id.) And plaintiff's mental status examinations "have largely been normal" aside from some disturbances in mood." (Id.)

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of" the impairment." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). Nonetheless, lack of medical evidence is a relevant factor for the ALJ to consider in her credibility analysis. (Id. at 681.) Here, the ALJ did not reject plaintiff's testimony based solely on a lack of medical evidence, but on the lack of medical evidence and the inconsistency between plaintiff's testimony and the medical record.

Accordingly, the court finds no error with respect to the ALJ's treatment of plaintiff's subjective testimony.

B. Lay Witness Testimony of Larry Bandy

Plaintiff challenges the ALJ's treatment of the lay witness testimony offered by plaintiff's friend Larry Brandy. (Pl.'s MSJ (ECF No. 20) at 27.) The testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect her activities must be considered and discussed by the ALJ. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Smolen, 80 F.3d at 1288. Persons who see the claimant on a

daily basis are competent to testify as to their observations.  Regennitter, 166 F.3d at 1298; Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993).

If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to each particular witness in doing so.  Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.  The mere fact that a lay witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony.  Regennitter, 166 F.3d at 1298; Smolen, 80 F.3d at 1289. Nor does the fact that medical records do not corroborate the testimony provide a proper basis for rejecting such testimony.  Smolen, 80 F.3d at 1289.  It is especially important for the ALJ to consider lay witness testimony from third parties where a claimant alleges symptoms not supported by medical evidence in the file and the third parties have knowledge of the claimant's daily activities.  20 C.F.R. § 404.1513(e)(2); SSR 88-13.

Here, the ALJ noted Bandy's testimony, but assigned it "little weight . . . for the same reasons" the ALJ found plaintiff's testimony "not fully credible."  (Tr. at 34.)  The ALJ may cite the same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar.  See Valentine, 574 F.3d at 694 (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints); Bennett v. Colvin, 202 F.Supp.3d 1119, 1130-31 (N.D. Cal. 2016) ("However, the Court has concluded that the ALJ's reasoning for rejecting Plaintiff's testimony was sufficient.  In such a situation, the ALJ also gives germane reasons for rejecting other lay witness testimony where it is found to be similar to the claimant's.").

In this regard, because the ALJ gave a clear and convincing reason for rejecting plaintiff's testimony, the ALJ also provided a germane reason for rejecting the similar lay witness testimony.

III. Step Five

Plaintiff argues that the ALJ erred at step five of the sequential evaluation by "relying on the vocational expert's testimony in response to a hypothetical that was not supported by the weight of the record evidence." (Pl.'s MSJ (ECF No. 20) at 27.)  At step five, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy

that [a] claimant can perform despite [his] identified limitations.'" Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (alterations in original)). "To aid in making this determination, the ALJ may rely on an impartial vocational expert to provide testimony about jobs the applicant can perform despite his or her limitations." Gutierrez v. Colvin, 844 F.3d 804, 806-07 (9th Cir. 2016).

While an ALJ may pose a range of hypothetical questions to a vocational expert ("VE") based on alternate interpretations of the evidence, the hypothetical question that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical question that is predicated on the ALJ's final residual functional capacity assessment, must account for all of the limitations and restrictions of the particular claimant. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).

"If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Id. (citation and quotation marks omitted); see also Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the hypothetical nor the answer properly set forth all of Taylor's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings."). Moreover, "[w]hen there is an apparent conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT")—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." Zavalin, 778 F.3d at 846.

Here, plaintiff's two-sentence argument is supported simply by a citation to plaintiff's claims asserted above. (Pl.'s MSJ (ECF No. 20) at 27.) In this regard, plaintiff is arguing that because the ALJ's treatment of the medical opinion and subjective testimony evidence was erroneous, the ALJ's reliance on the VE's testimony based on that evidence was erroneous. However, the court has found no error with respect to any of plaintiff's claims.

Accordingly, plaintiff is not entitled to summary judgment on the claim that the ALJ erred at step five of the sequential evaluation.

CONCLUSION

The court has found that plaintiff is not entitled to summary judgment on any claim of error.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 20) is denied;
2. Defendant's cross-motion for summary judgment (ECF No. 23) is granted;
3. The decision of the Commissioner of Social Security is affirmed; and
4. The Clerk of the Court shall enter judgment for defendant and close this case.

Dated: September 14, 2018

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\maxwell0705.ord